McGUINNESS v. RODGERS & HAGERTY, Inc.   (No. 7452.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

MUNICIPAL CORPORATIONS ☞819—INJURIES TO PEDESTRIAN—ACTIONS—CON-TRIBUTORY NEGLIGENCE.

    In an action for injury to a pedestrian crossing a street under which a subway was being laid, and which was obstructed by flat cars loaded with curbing stone, it appeared that plaintiff attempted to pass between a flat car and the curbing line, and was struck by a curbstone that had been lifted from the flat car and was held upright by defendant's workmen. Plaintiff had full knowledge of the situation, and had ample opportunity to pass around the workmen.  *Held*, that plaintiff was guilty of contributory negligence, and that there was no actionable negligence on the part of defendant's employés.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. ☞819.]

Appeal from Trial Term, New York County.

Action by Joseph McGuinness against Rodgers & Hagerty, Incorporated.   From a judgment for plaintiff for $2,500, and an order denying new trial, defendant appeals.   Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Frank Verner Johnson, of New York City (Edward F. Lindsay, of New York City, of counsel), for appellant.

Martin T. Manton, of New York City (Vine H. Smith, of New York City, of counsel), for respondent.

CLARKE, J.   The defendant for some time had been engaged in the construction of the subway in the Bronx.   At the intersection of 144th street and Mott avenue the trench which had been dug had been re-covered and Mott avenue had been paved.   The sidewalk at the southwest corner of the avenue at 144th street was decked over with a wooden platform, from which three steps led down into 144th street. There was a fence running east and west near the curb line of 144th street, which ended at the building line of Mott avenue, leaving an

open space for pedestrians desiring to cross the street beyond the easterly end of this fence. There was a building on this southwest corner, which had a drug store on the ground floor and above it were apartments to which the entrance was the second door from the corner of Mott avenue. The passageway, therefore, along 144th street was on the decked-over portion and between the fence and the building line, so that a person going east had the fence at his left hand. The plaintiff was the proprietor of a stationery and cigar store located on the north side of 144th street two doors east of Mott avenue. He was thoroughly familar with the work which had been and was being conducted at this place. There was a railroad, called a "dinky road," on the surface of Mott avenue, used for the transportation of building materials used in construction.

On the 24th of November, 1913, the curb on 144th street had not been set. There were three flat cars on Mott avenue loaded with curbstones. The end car was standing partly north and partly south of the end of this fence. The plaintiff locked up his store and went to the entrance of the apartment beyond the drug store on the southwest corner to deliver some cigarettes to a customer. Having done so, he came out and started back on the southerly side, between the fence and the building, going east to go back to his store; the fence being at his left. At this time some of the curbstones had been unloaded from the car by laborers and were lying on the ground. The way this was done was to slide them from the car to two men on the ground, who received them, dropped the end on the ground, and then let them fall down. He testified that when he got to 144th street and Mott avenue he could not continue the way he was going because there was a line of flat cars blocking his way. He turned around and headed north to cross 144th street. He was about on the crosswalk on the westerly side of Mott avenue walking, proceeding north, and had left the curb about 4 feet. The end of the fence to his left as he turned to go north was about 6 or 8 feet. Between him and the fence as he turned he saw two workmen holding the curbstone on end. He passed in front of the men, who were to his left about 3 feet from where he was walking. As he got opposite to them, he happened to see out of the corner of his eye the stone starting to fall, and he jumped to his right. The stone fell on him and broke his right leg, the furthest from the stone. He said the men handling the stone were about 8 feet from the car, about 17 or 18 feet away from the spot where he first noticed the car. They were 10 feet from him when he first noticed them. These men, while he was traveling 10 feet, were standing still, the stone was end up, and they were holding it in that position. "I don't know as I expected them to do anything with it. I thought I had plenty of time to cross. I did not give it any thought as to what they were going to do with it, outside of the fact that I seen them there standing, holding it." When the stone fell, it fell towards the east, towards his store and the car on the track, so that when he was hit he was going between the stone and the car on the track, a space about 6 to 8 feet, and they were away from the end of the fence 6 or 8 feet. His witness May Twiggs testified that she was standing in front of the drug store, and that looking along at the end of this fence she

could see the flat cars on the track; that they were loaded with curb-stone, and she saw men unloading them; that she saw those men car-rying these stones and putting them in at the curb line of the sidewalk; that McGuinness, as he came along, passed close by her, so that if he looked ahead he could see all these things that she saw. The plaintiff's other witness, Losee, also testified that the plaintiff was walking at the time of the accident; but he had signed and sworn to a written statement on December 12, 1913, in which he said:

"I saw McGuinness come running from behind the fence and start across Mott avenue diagonally in the direction of the northeast corner of Mott ave-nue and 144th street. He ran into the curbstone when it was falling, and came so swiftly that the accident was unavoidable."

The testimony of the defendant, given by three witnesses, is that he was running diagonally or cutting across towards his own place, which was near the northeast corner, and that there was nothing to obstruct his way if he had gone straight north, as he claimed that he did. The plaintiff swore himself that he had locked the door of his store at that time and wanted to get back there as quickly as he could.

It seems to me that, knowing the situation thoroughly, that the pro-cess of construction was going on, that the curb had not been laid, but that the stones were being unloaded for that purpose, when he undertook to pass in the narrow space between the men whom he saw holding the curbstone on end and the car, which must be the fact, for he said the stone fell towards the east, which corroborates the testi-mony of the defendant that he was going diagonally across, that he was guilty of contributory negligence, and that there was no action-able negligence on the part of the employés of the defendant. The weight of evidence is that he was running; but, assuming that he was walking, he either paid no attention or thrust himself into this narrow space between the stone and the car when there was plenty of room, as he himself testified, on the other side.

I think the motion to dismiss should have been granted. The find-ing of the want of contributory negligence and of the actionable neg-ligence of the defendant should be reversed.

The judgment and the order appealed from should be reversed, with costs to the appellant, and the complaint dismissed, with costs. All concur.